**IN RE J.B.**

[197 N.C. App. 497 (2009)]

━━━━━━━━━━

IN RE: J.B.

No. COA09-21

(Filed 16 June 2009)

**1. Child Abuse and Neglect— jurisdiction—improperly terminated**

The trial court improperly terminated its jurisdiction over a juvenile case by mandating that future matters of custody and visitation were to be addressed under Chapter 50 of the General Statutes without complying with the mandates in N.C.G.S. § 7B-911.

**2. Child Abuse and Neglect— placement with grandmother— findings—not sufficient**

The trial court erred in finding and concluding that a juvenile should be placed with his grandmother by not making the findings mandated by N.C.G.S. §§ 7B-906 and 907.

**3. Child Abuse and Neglect— best interest of child—findings—not sufficient**

The trial court's findings in a juvenile case were not sufficient to support its best interest determination, especially in light of findings and evidence regarding respondent's compliance with the DSS case plan and assessments made by DSS and the guardian ad litem.

Appeal by respondent from order entered 9 October 2008 by Judge Scott C. Etheridge in Moore County District Court. Heard in the Court of Appeals 6 May 2009.

*Richard Croutharmel for Respondent-Mother.*

*Lisa M. Schreiner for Appellee-Guardian Ad Litem.*

IN RE J.B.

[197 N.C. App. 497 (2009)]

HUNTER, ROBERT C., Judge.

Respondent-mother ("respondent") appeals from a "Review Order[,]" which, *inter alia*: (1) granted legal and physical custody of her son, J.B., to his paternal grandmother, E.F.; (2) released her and the respondent-father's[1] respective attorneys, the Guardian ad litem ("GAL") advocate, and the attorney advocate; and (3) transferred the case to Chapter 50 and terminated the trial court's jurisdiction over the juvenile proceeding. After careful review, we reverse the trial court's order and remand for further proceedings.

## I. Background

On 17 May 2007, J.B. was placed in the custody of petitioner Moore County Department of Social Services ("DSS") pursuant to a non-secure custody order. On 18 May 2007, DSS filed a juvenile petition alleging that J.B. was a neglected juvenile. At the time DSS filed the petition, J.B. lived with his father, T.P., and his live-in girlfriend, A.B.[2] DSS obtained legal custody of J.B. and placed him with his paternal grandmother, E.F.

Following a 5 September 2007 adjudication hearing, the court determined that J.B. had been subject to an environment injurious to his welfare and adjudicated him neglected. This determination stemmed from an altercation between respondent and A.B. that occurred in J.B.'s presence during a visitation exchange. Pursuant to the adjudication order, J.B.'s legal custody remained with DSS.

Following an 11 September 2007 disposition hearing, the trial court entered a disposition order, which, *inter alia*: (1) concluded that J.B.'s legal custody should remain with DSS; and (2) mandated that respondent, T.P., and A.B. submit to, and pass, three random drug screens as a prerequisite to obtaining unsupervised visitation.

Following a 10 December 2007 review hearing, a "Review Order" was entered, which, *inter alia*: (1) continued J.B.'s placement in E.F.'s home, "with alternating weekend overnight visits" with respondent and her live-in boyfriend, D.B.; (2) noted that the "prior civil order prohibit[ing D.B.] from being in the home with [J.B.]" had been superseded by a subsequent order of the trial court which "allowed [J.B] to be in the home of [respondent] and [D.B.] unsupervised"; (3) continued legal custody of J.B. with DSS; and (4)

---

1. Respondent father did not appeal the order.

2. The record indicates that T.P. had exclusive custody of J.B. at the time the petition was filed.

**IN RE J.B.**

[197 N.C. App. 497 (2009)]

mandated that respondent, D.B., T.P., and A.B. all submit to random drug screens.

Following an 11 February 2008 review hearing, the trial court entered another "Review Order[,]" which found, *inter alia,* that: (1) J.B. had been engaging in therapy in an effort to reunify with respondent and the therapy was going well; (2) DSS had recommended a trial placement of J.B. in respondent's home, but that the court did not concur in this recommendation; and (3) "[t]he present permanent plan remains reunification with a parent." Based on these and other findings of fact, the court concluded, *inter alia,* that: (1) it was contrary to J.B.'s best interest to return home; (2) it was in his best interest for legal custody to remain with DSS; and (3) it was in his best interest to continue his placement with E.F.

For the most part, over the next few months, the case maintained its status quo. However, for a short period of time, respondent lost the right to unsupervised visits with J.B. at her residence because D.B. missed some of his court-mandated drug screens. On 25 April 2008, the unsupervised visits resumed based upon negative drug screens by both respondent and D.B. and the absence of any reports of domestic violence in respondent's home. As indicated by the trial court's orders, during this period, J.B.'s permanent plan remained reunification with a parent.

On 31 July 2008, Richmond County Department of Social Services issued home study reports on respondent's and E.F.'s respective homes, which concluded that J.B. would be safe in either home. Specifically, with regard to respondent's home, the report stated: "There were no findings of maltreatment. No current safety issues exist. At this time, it does not appear [J.B.] would be unsafe. Based on the findings of Richmond County CPS Assessment, [J.B.] is not at risk of future harm. [J.B.] is not in need of protection." In late August 2008, DSS Social Worker, Adrian Black, submitted a "Family Reunification Assessment", which concluded: (1) there was a moderate risk level in respondent's home; (2) respondent had demonstrated "High Compliance" with her case plan; and (3) it was safe for J.B. to live in her home. In addition, DSS recommended that J.B. be returned to respondent's custody. The guardian ad litem ("GAL") report also recommended that legal and physical custody of J.B. be given to respondent and D.B.

A hearing was held on 28 August and 11 September 2008. At the close of testimony, respondent, DSS and the GAL all agreed that J.B.

IN RE J.B.

[197 N.C. App. 497 (2009)]

should be placed in respondent's custody. T.P.'s attorney asserted that J.B. should be placed in E.F.'s custody. In its 9 October 2008 "Review Order", the trial court determined, *inter alia*, that it was in J.B.'s best interest to: (1) grant physical and legal custody to E.F.; and (2) terminate the court's jurisdiction over the juvenile case and transfer the matter to Chapter 50. This appeal followed.

## II. Analysis

At the outset, we note that in the instant case: (1) during the proceeding below, both DSS and the GAL asserted that it was in J.B.'s best interest for custody to be granted to respondent; (2) the GAL has filed an appellee's brief on behalf of J.B. asserting that the trial court's 9 October 2008 order should be reversed; and (3) no brief has been filed with this Court urging us to affirm the order.

### A. Transfer to Chapter 50 and Termination of Jurisdiction

[1] On appeal, both respondent and the GAL assert that the trial court erred by transferring J.B.'s juvenile case to Chapter 50 and terminating its jurisdiction over the juvenile proceeding. In addition, respondent contends that the trial court erred because its order lacks numerous findings of fact mandated by N.C. Gen. Stat. § 7B-911 (2007). We agree.

Here, the trial court made no findings of fact regarding its decision to transfer J.B.'s case to Chapter 50 and to terminate its jurisdiction. Rather, the court simply concluded: "It is in the child's best interest that any future issues related to custody including matters of visitation that may arise between the respondent parents and paternal grandmother shall be conducted pursuant to the provisions of NCGS chapter 50[.]" Based on this conclusion, the court mandated that the respondent parents' respective attorneys, the GAL, and the attorney advocate were to be released and that "[t]he respondent parents are to address future matters in connection with custody, including issues related to visitation pursuant to the provisions of NCGS Chapter 50 and not under the provisions of NCGS Chapter 7B."

At the outset, we note that section 7B-911 governs "[c]ivil childcustody order[s]" and the transfer of Chapter 7B juvenile cases to Chapter 50. *Id.* In the instant case, the trial court labeled its 9 October 2008 order as a "Review Order[,]" not as a civil child custody order. As such, it appears that the trial court impermissibly intended to transfer J.B.'s juvenile case to Chapter 50 without entering the requisite civil custody order mandated by section 7B-911. *See In re: H.S.F.,*

182 N.C. App. 739, 744, 645 S.E.2d 383, 386 (2007) (stating that section 7B-911(c)) only applies to civil custody orders and not review orders). However, even if we were to assume, *arguendo*, that the trial court mislabeled its 9 October 2008 order and actually intended to enter a civil custody order, the findings of fact contained therein do not comply with section 7B-911.

Pursuant to section 7B-911:

(a) After making proper findings at a dispositional hearing or any subsequent hearing, the court . . . may award custody of the juvenile to a parent or other appropriate person pursuant to G.S. 50-13.1, 50-13.2, 50-13.5, and 50-13.7, as provided in [section 7B-911], and terminate the court's jurisdiction in the juvenile proceeding.

(b) When the court enters a custody order under [section 7B-911], the court shall either cause the order to be filed in an existing civil action relating to the custody of the juvenile or, if there is no other civil action, instruct the clerk to treat the order as the initiation of a civil action for custody. . . .

N.C. Gen. Stat. § 7B-911(a), (b). Subsection (b) further provides that where the order is filed in an existing civil action and the person awarded custody is not a party thereto, the court must order the person to be joined as a party and the caption of the case to be changed accordingly. N.C. Gen. Stat. § 7A-911(b). In existing actions, "[t]he order shall resolve any pending claim for custody and shall constitute a modification of any custody order previously entered in the action." *Id.* Where the court's order initiates a civil action, the court must designate the parties to the action and determine the appropriate case caption. *Id.* In initiated actions, "[t]he order shall constitute a custody determination, and any motion to enforce or modify the custody order shall be filed in the newly created civil action in accordance with the provisions of Chapter 50[.]" *Id.* Finally, pursuant to N.C. Gen. Stat. § 7B-911(c):

(c) The court may enter a civil custody order under [section 7B-911] and terminate the court's jurisdiction in the juvenile proceeding only if:

(1) In the civil custody order the court makes findings and conclusions that support the entry of a custody order in an action under Chapter 50 of the General Statutes or, if the juvenile is already the subject of a custody order

entered pursuant to Chapter 50, makes findings and conclusions that support modification of that order pursuant to G.S. 50-13.7; and

(2) In a separate order terminating the juvenile court's jurisdiction in the juvenile proceeding, the court finds:

a. That there is not a need for continued State intervention on behalf of the juvenile through a juvenile court proceeding; and

b. That at least six months have passed since the court made a determination that the juvenile's placement with the person to whom the court is awarding custody is the permanent plan for the juvenile, though this finding is not required if the court is awarding custody to a parent or to a person with whom the child was living when the juvenile petition was filed.

While the evidence in the record does intimate that a prior civil order had been entered, which gave T.P. custody of J.B., this order does not appear in the record, nor is there any indication that E.F. was a party to that proceeding. Furthermore, nothing in the record suggests that the 9 October 2008 order was filed in an existing civil action, that E.F. was joined as a party in that action, that the court's order initiated a civil action, or that the court was modifying a prior custody order via its 9 October 2008 order. Consequently, the court did not comply with N.C. Gen. Stat. § 7B-911(b) in entering its order.

In addition, the order clearly lacks the findings mandated by N.C. Gen. Stat. § 7B-911(c)(2). Here, the court did not find that there was no longer a need for continued State intervention on behalf of J.B. in accordance with subsection 7B-911(c)(2)(a). Furthermore, the court did not find that six months had passed since the court made a determination that J.B.'s placement with E.F. was the permanent plan for J.B. in accordance with subsection (c)(2)(b). In fact, the trial court's order makes no reference to the permanent plan for J.B., and all of the prior orders in the record that contain findings regarding the permanent plan, state that the permanent plan for J.B. was reunification with a parent. Also, when the juvenile petition was filed, J.B. was living with his father; consequently, the court was not excused from making this finding when it awarded custody to E.F.

In sum, regardless of whether the trial court's order was accurately labeled as a "Review Order" or was mislabeled and intended to

**IN RE J.B.**

[197 N.C. App. 497 (2009)]

be a civil custody order, the court improperly terminated its jurisdiction over J.B.'s juvenile case and transferred the matter to Chapter 50 without complying with the mandates contained in section 7B-911.

### B. Findings as to Custody

[2] In its 9 October 2008 order, the trial court found and concluded that it was in J.B.'s best interest for his physical and legal custody to be placed with E.F. Both respondent and the GAL contend that the trial court's order lacks the requisite findings mandated by section 7B-906 and section 7B-907 respectively, and that as a result, we should reverse the order and remand the case for further proceedings. We agree.

At the outset, we note that it is difficult to discern from the record if the 11 September 2008 hearing[3] was a section 7B-906 review hearing, a section 7B-907 permanency planning hearing, or a combined hearing.[4] However, given that the order contains both a finding of fact and a conclusion of law, which state that "the Court has considered the criteria set out in [sections 7B-906 and 7B-907] and has made specific findings as to those that are relevant[,]" it appears that the court intended to conduct a combined hearing.

N.C. Gen. Stat. § 7B-906(c) provides:

(c) At every [custody] review hearing, the court shall consider information from the parent, the juvenile, the guardian, any foster parent, relative, or preadoptive parent providing care for the child, the custodian or agency with custody, the guardian ad litem, and any other person or agency which will aid in its review. The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition.

In each case the court shall consider the following criteria and make written findings regarding those that are relevant:

---

3. The 11 September 2008 hearing actually began on 28 August 2008; however, the court continued the hearing until 11 September 2008.

4. "In any case where custody is removed from a parent, guardian, custodian, or caretaker, the judge shall conduct a review hearing designated as a permanency planning hearing within 12 months after the date of the initial order removing custody, and the hearing may be combined, if appropriate, with a review hearing required by G.S. 7B-906." N.C. Gen. Stat. § 7B-907(a).

(1) Services which have been offered to reunite the family, or whether efforts to reunite the family clearly would be futile or inconsistent with the juvenile's safety and need for a safe, permanent home within a reasonable period of time.

(2) Where the juvenile's return home is unlikely, the efforts which have been made to evaluate or plan for other methods of care.

(3) Goals of the foster care placement and the appropriateness of the foster care plan.

(4) A new foster care plan, if continuation of care is sought, that addresses the role the current foster parent will play in the planning for the juvenile.

(5) Reports on the placements the juvenile has had and any services offered to the juvenile and the parent, guardian, custodian, or caretaker.

(6) An appropriate visitation plan.

. . . .

(8) When and if termination of parental rights should be considered.

(9) Any other criteria the court deems necessary.

After making the necessary findings of fact, the court

may appoint a guardian of the person for the juvenile pursuant to G.S. 7B-600 or may make any disposition authorized by G.S. 7B-903, including the authority to place the juvenile in the custody of either parent or any relative found by the court to be suitable and found by the court to be in the best interests of the juvenile. The court may enter an order continuing the placement under review or providing for a different placement as is deemed to be in the best interests of the juvenile. . . .

N.C. Gen. Stat. § 7B-906(d).

At a section 7B-907 permanency planning hearing, the court considers the same evidence as in a section 7B-906 custody review hearing also in an effort "to determine the needs of the juvenile and the most appropriate disposition." N.C. Gen. Stat. § 7B-907(b). Following a hearing in which the juvenile is not returned home, the court must

consider the following criteria and make written findings regarding those that are relevant:

(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;

(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;

(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;

(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;

(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile;

(6) Any other criteria the court deems necessary.

*Id.* At the end of the hearing, the court must also

make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time. The judge may appoint a guardian of the person for the juvenile pursuant to G.S. 7B-600 or make any disposition authorized by G.S. 7B-903 including the authority to place the child in the custody of either parent or any relative found by the court to be suitable and found by the court to be in the best interest of the juvenile. If the juvenile is not returned home, the court shall enter an order consistent with its findings that directs the department of social services to make reasonable efforts to place the juvenile in a timely manner in accordance with the permanent plan, to complete whatever steps are necessary to finalize the permanent placement of the juvenile, and to document such steps in the juvenile's case plan. . . .

N.C. Gen. Stat. § 7B-907(c).

**IN RE J.B.**

[197 N.C. App. 497 (2009)]

In sum, both section 7B-906 and section 7B-907 provide trial courts with the authority to place a juvenile in the custody of a relative in accordance with section 7B-903, so long as it is in the best interest of the juvenile. However, prior to doing this, the court must make the necessary relevant findings mandated by sections 7B-906 and 7B-907 and continue to review the matter until either reunification, termination of parental rights, or other change in custody occurs.

Here, the trial court made the following pertinent findings of fact:

9. That [J.B.] is presently in the physical custody home [sic] of his paternal grandmother[.] [J.B.] completed kindergarten and was promoted to the first grade, attending Carthage Elementary School and is doing well.

10. That [J.B.] has been referred to BHC/Mentor for therapy in connection with anger management and presently receives therapy[.]

11. That [J.B.] continues to visit his mother on weekends and additionally stayed with his mother and her family from August 18, 2008 through August 21, 2008 and no problems were reported.

12. That [respondent] and her paramour, [D.B.], continue under court order to submit to random drug screens and submit to screens when requested and the results continue to be negative.

13. That there have been no reports of acts of domestic violence in the home of [respondent] or any safety concerns by [DSS] of [J.B.] while in the care of [respondent].

14. That the Court heard testimony of Social Workers with the Richmond County Department of Social Services as to the results of the RCDSS Family Assessment of the homes of [E.F.] and [respondent] and the absence of safety concerns in either home.

. . . .

18. That the Court heard testimony of Social Worker Adrian Black as to his recommendations and observations of the interaction of the child with both parents and the grandmother, as well as, the absence of any safety concerns

**IN RE J.B.**

[197 N.C. App. 497 (2009)]

for the child in either the home of the mother or paternal grandmother, but with reservations as to the home of the respondent father.

19. That the Court heard testimony of the respondent mother as to her desire to have the child reunified with the mother and permanent placement in her home.

20. That the Court heard testimony as to the [respondent] allowing the six year old [J.B.] to play in and around a creek in proximity of the [respondent's] home in the company of his thirteen year old brother without further adult supervision which the Court finds competent.

21. That the Court heard testimony as to the [respondent] allowing the thirteen year old son to operate a motor vehicle on [their] property with the six year old [J.B.] in the automobile without further adult supervision which the Court finds competent.

22. That [respondent's] paramour [D.B.] was absent on each day of the proceeding and did not testify.

23. That the Court heard testimony of the present daycare worker Collins as to the conduct and behavior of [J.B.] and his demeanor immediately preceding and following court proceedings and following visits with his Mother, including his attendant anxiety and appearance of sadness and depression.

24. That both the Daycare worker Collins and [E.F.] testified as to the child's anxiety about having to choose between living with his grandmother, his father or his mother.

25. That the child has been placed continuously in the home of his grandmother . . . for a period of time in excess of twelve months, except for brief periods of trial placement and weekends in the home of his mother[.]

26. That the paternal grandmother . . . testified as to her willingness to act as custodian of the minor child, that she understood the legal significance of the placement and that she had adequate resources to care appropriately for the child.

27. That at present, the father, [T.P.], continues to fail to follow the recommendations of [DSS] and is not a viable placement resource for the minor child.

28. That it is in the child's best interest that his custody be placed with his paternal grandmother . . . and that he continues to have every weekend visitation with his mother[.]

29. [DSS] has made reasonable efforts since the last hearing to prevent or eliminate need for placement in foster care. Efforts made by [DSS] are set out in the [DSS] Court Summary and adopted and incorporated herein as if set out fully herein and specifically include but are not limited to consults with the parents, consults with mental health, home visits and the offer of drug screenings, consults with care-takers, and appropriate referrals on behalf of the juvenile and the offer of transportation.

30. That it is desirable and in the best interest of the child that the child have continued visitation with the respondent parents, every weekend with respondent mother . . . and at such times as respondent the father [T.P.] and the paternal grand-mother may agree.

31. The continuation in or return to the home by the minor child is contrary to his best interests.

32. That the Court has considered the criteria set out in NCGS §7B-906 [sic] and NCGS 7B-907 and has made specific find-ings as to those that are relevant.

33. That there is a reasonable alternative to continued custody with [DSS] for the minor child.

Here, the trial court's order lacks numerous requisite findings to establish what precisely the custody plan for J.B. is and essentially undermines "[t]he permanency planning process in Article 9 [which] is meant to bring about a definitive placement plan for the abused, neglected, or dependent child." *In re: R.T.W.*, 359 N.C. 539, 546, 614 S.E.2d 489, 494 (2005), *superseded on other grounds as recognized in, In re: T.R.P.*, 360 N.C. 588, 592, 636 S.E.2d 787, 791 (2006) and *In re K.J.L.*, 196 N.C. App. ——, ——, 674 S.E.2d 789, 791-95 (2009). For example, the order does not specify whether the grant of physical and legal custody to E.F. was a continuation or modification of the origi-nal placement or the new permanent plan. In fact, the order is com-pletely silent with regard to: (1) the permanent plan for J.B.; (2) whether the permanent plan had changed from reunification with a parent; and (3) whether and why reunification efforts should be main-tained or ceased. The findings do not address "[w]hether it is possible

for the juvenile to be returned home . . . within the next six months, and if not, why it is not in the juvenile's best interests to return home." N.C. Gen. Stat. § 7B-907(b)(1). Also, other than the findings as to visitation and the conclusions of law as to E.F.'s rights and responsibilities, the order is devoid of findings that clearly delineate "the rights and responsibilities which should remain with the parents[.]" N.C. Gen. Stat. § 7B-907(b)(2). Even with regard to visitation, the trial court's order improperly delegates decisions regarding respondent father's visitation rights to E.F. *See, e.g., In re E.C.*, 174 N.C. App. 517, 522, 621 S.E.2d 647, 652 (2005) ("The awarding of visitation of a child is an exercise of a judicial function, and a trial court may not delegate this function to the custodian of a child."). Nor are there any findings indicating that the "juvenile's return [to respondent's] home is unlikely[.]" N.C. Gen. Stat. §§ 7B-906(c)(2), 7B-907(b)(2), (3) and (4). "[D]ecisions of this Court support reversing the order of the trial court and remanding the case where the findings of fact do not comport with N.C. Gen. Stat. § 7B-907." *In re: Ledbetter*, 158 N.C. App. 281, 286, 580 S.E.2d 392, 395 (2003).

### C. Best Interest Determination as to Custody

**[3]** Next, both respondent and the GAL assert that the trial court employed the wrong standard in reaching its best interest determination with regard to the issue of J.B.'s custody. In addition, even assuming, *arguendo*, that the court applied the correct standard, they both argue that the trial court's findings do not support its conclusion that granting legal and physical custody of J.B. to E.F. is in the juvenile's best interest. As discussed *infra*, we agree.

At the outset, we note that our review is hindered by the fact that the order is unclear as to the precise custody ruling and best interest determination the trial court made here, including, *inter alia*, whether the grant of custody to E.F. constituted a change to J.B.'s permanent plan and whether reunification with respondent is still possible and desirable. Furthermore, we note that the grant of custody to E.F. subrogates respondent's paramount rights as a parent.

That being said, the findings show that respondent maintained diligent efforts to comply with the DSS case plan in an effort to be reunified with J.B., and both DSS and the GAL noted the absence of safety concerns in respondent's home and recommended that custody of J.B. be granted to respondent. While the trial court made some findings, particularly 20 through 24, which indicate that the court had some reservations about placing J.B. in the custody of respondent

and D.B., these findings are inadequate to support its best interest determination, especially in light of the findings and evidence regarding respondent's compliance with the DSS case plan and the assessments made by DSS and the GAL.

In sum, for the above reasons, we reverse the 9 October 2008 order and remand this case to the trial court for further proceedings not inconsistent with this opinion. Based on our disposition, we do not reach respondent's remaining assignments of error.

Reversed and remanded.

Judges McGEE and BEASLEY concur.

