An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-474

Filed 18 February 2026

Duplin County, Nos. 24JA000037-300, 24JA000038-300, 25CVD000054-300, 25CVD000055-300

IN THE MATTERS OF: B.C., A.B.W.

Appeal by respondent-mother from 90 Day Review Orders and the resulting Child Custody Orders entered 8 January 2025 by Judge Morgan H. Swinson in Duplin County District Court. Heard in the Court of Appeals 27 January 2026.

> *Parent Defender Wendy C. Sotolongo, by Senior Assistant Parent Defender J. Lee Gilliam, for appellant-respondent-mother.*
>
> *Joint brief filed by Hedrick Gardner Kincheloe & Garofalo, by M. Duane Jones, for Guardian ad Litem, and The Law Office of J. Blake Phillips, PLLC, by J. Blake Phillips, for Duplin County Department of Social Services.*

ARROWOOD, Judge.

Respondent-mother ("Mother") appeals from the trial court's 90 Day Review Order and Child Custody Order granting permanent custody of her children Anna and Ben[1] to their fathers. For the following reasons, we affirm in part and vacate in

---

[1] Pseudonyms are used to protect the identities of the minor children.

part and remand for additional findings of fact.

## I.     Background

On 7 June 2024, Mother experienced a suspected episode of paranoid schizophrenia and was driving dangerously. She was approached by an officer who observed Anna, Ben, and their half-brother Adam sitting unrestrained in her car. Mother exhibited erratic behavior and explained that she believed everyone was trying to kill her and the children. The incident prompted a protective services report to the Duplin County Department of Social Services ("DSS"). It was the fourth report made concerning Mother and her children since May 2024 and DSS got involved with the family.

That same day, Mother was involuntarily committed to the hospital where she tested positive for methamphetamines and marijuana. Meanwhile, the children were temporarily placed with family members. Anna was placed with her father, Mr. W. Ben and Adam were placed with their maternal aunt. DSS filed neglect petitions and received nonsecure custody of the children on 12 June 2024. Thereafter, the children continued to reside with the same guardians, and Mother was allowed one hour of visitation with the children per week.

On 3 July 2024, DSS filed amended juvenile petitions and the trial court held a hearing to determine the need for continued nonsecure custody. The trial court released nonsecure custody of Anna and Ben but kept responsibility for the placement and care of the children with DSS. Ben was placed with his paternal grandfather

until 17 July 2024 when he was placed with his father, Mr. C. Anna continued her placement with her father, Mr. W. Mother was allowed one hour of visitation per week.

Anna and Ben were adjudicated neglected following a hearing on 6 November 2024. Both children continued to be placed with their respective fathers, which DSS reported had been going well. The court granted Mother ten hours of supervised visits with the children and ordered a case plan that included comprehensive clinical and substance abuse assessments, consent to random drug screens by DSS, and maintaining contact with DSS.

On 8 January 2025, the trial court held a "Review/Permanency Planning Hearing." Isabelle Sarmiento, a social worker involved with the family, testified at the hearing. Sarmiento testified that Mother's visits with Ben and Anna had been going well. Additionally, she stated that Mother was following the DSS's case plan and she had no concerns about Mother harming the children. However, Sarmiento also testified that Mother was living with her aunt and did not have stable housing to accommodate the children. Additionally, at her drug screenings, Mother continued to test positive for marijuana.

DSS also submitted a court report detailing the parties' progress on the case plans and providing information about the children's placements. The report stated that Anna was doing well with her father, Mr. W, and his live-in girlfriend. The report did not contain any additional information about Mr. W's girlfriend or any

indication that she had undergone a specific vetting process. DSS recommended that Mr. W be granted custody of Anna and Mr. C be granted custody of Ben.

After the hearing, the trial court issued a "90 Day Review Order" awarding custody of Anna and Ben to their fathers, Mr. W and Mr. C, respectively. The court granted secondary custody in the form of visitation and telephonic communication to Mother. Additionally, the trial court determined that there was "no longer a need for continued State intervention on behalf of the Juvenile[s] through a juvenile court proceeding" and transferred the case to a civil proceeding under Chapter 50. Mother filed notice of appeal to this court on 14 February 2025.

## II.   Discussion

Mother raises three issues on appeal:  1) whether the trial court erred when it placed the case on a review hearing track when custody had been removed from Mother; 2) whether the trial court abused its discretion by awarding Mr. W full custody of Anna without vetting the other adult who lived in the home; and 3) whether the trial court erred when it transferred a juvenile neglect proceeding to a civil custody proceeding without making proper findings. We address each argument in turn.

## A.   Standard of Review

"We review an order's compliance with statutory requirements *de novo*." *In re S.M.L.*, 272 N.C. App. 499, 517 (2020) (citation omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that

- 4 -

of the trial court." *In re E.E.*, 294 N.C. App. 133, 136 (2024) (citation omitted). We review a trial court's dispositional choices in a permanency planning order for abuse of discretion. *In re K.P.*, 383 N.C. 292, 302 (2022). "An abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* (quoting *In re T.L.H.*, 368 N.C. 101, 107 (2015) (extraneity omitted)).

B.      Permanency Planning Hearing

Mother argues that because custody of Ben and Anna had been removed from her, she was entitled to, but deprived of, a permanency hearing under N.C.G.S. §§ 7B-906.1 to -906.2 (2025). DSS does not contest that Mother was entitled to a permanency hearing. Rather, DSS argues that though the order was labeled a "90 Day Review Order", the trial court's hearing and order met all the requirements of a permanency hearing, therefore satisfying § 7B-906.2.

N.C.G.S. § 7B-906.1(a) requires the trial court to conduct either a review hearing or a permanency planning hearing within 90 days of an initial disposition hearing. It further explains that "[i]f custody has not been removed from a parent, . . . the hearing shall be designated as a review hearing. If custody has been removed from a parent, . . . the hearing shall be designated as a permanency planning hearing." N.C.G.S. § 7B-906.1(a). Whether a hearing is a review hearing or a permanency planning hearing depends more on the substance and function of

the hearing than the title assigned to the hearing and accompanying order. *See In re J.B.*, 197 N.C. App. 497, 503 (2009).

Review hearings and permanency planning hearings share similar characteristics and requirements under N.C.G.S. § 7B-906.1. However, N.C.G.S. § 7B-906.2 provides specific guidance and additional requirements for permanency planning hearings. For example, it requires that the court adopt one or more from a list of permanent plans, which includes "[c]ustody to a relative or other suitable person." N.C.G.S. §7B-906.2(a). It also requires that the court implement concurrent planning until a permanent plan is or has been achieved. *Id.* §7B-906.2(a1). At least one of the plans should be reunification, unless the court makes certain written findings or a permanent plan has been achieved. *Id.* §7B-906.2(b).

Where reunification is not a part of the permanent plans, the court must make written findings on four factors which demonstrate the degree of success or failure toward reunification:

> (1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
>
> (2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
>
> (3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
>
> (4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.

*Id.* §7B-906.2(d). The trial court need not recite the statutory language verbatim but "the order must make clear that the trial court considered the evidence in light of whether reunification would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." *In re C.H.*, 381 N.C. 745, 755 (2022).

Here, despite mislabeling the order, the trial court satisfied all of the requirements of a permanency planning hearing. The hearing itself was conducted as a "Review/Permanency Planning Hearing" and the parties testified as to whether a permanent plan had been achieved by placing Ben and Anna with their fathers. Indeed, placement with the child's father is a permissible permanent plan under N.C.G.S. §7B-906.2(a).

Additionally, the trial court made all the requisite findings in order to eliminate reunification with Mother as a permanent plan. In its "90 Day Review Orders" for both Ben and Anna, the trial court made the following pertinent findings of fact:

> 10. That the Respondent Mother was previously Ordered to submit to random drug screens as requested by the Department. The Respondent Mother continues to test positive for illicit substances as of her last drug screen on December 13, 2024.
> 11. That the Respondent Mother completed comprehensive clinical assessment on November 12, 2024, and was diagnosed as follows:
> > a. Post-traumatic Stress Disorder - Chronic;
> > b. Cannabis Use - Unspecified with anxiety; and
> > c. Opioid use - Unspecified, in remission.

12. That the Respondent Mother is participating in therapy once a week.

13. That the Respondent Mother is employed.

14. That the Respondent Mother does not have reliable transportation.

15. That the Respondent Mother currently lives in the home of her aunt in Bladen County, North Carolina. The aunt will not allow any of the children to live in the home full time but does consent to visitation occurring at the home.

16. That the Respondent Mother is has [sic] not completed her case plan and does not have a home suitable for the placement of the Juvenile at this time.

17. That the Respondent Mother is participating in or cooperating with the plan, the Department of Health and Human Services, and the Guardian ad Litem for the Juvenile.

18. That the Respondent Mother remains available to the Court, the Department of Health and Human Services, and the Guardian ad Litem for the Juvenile.

. . . .

28. That the conditions which led to the removal of the Juvenile from the Respondent Mother still exists and that return of the Juvenile to said home would be contrary to the welfare of the Juvenile.

Findings 10–16 describe Mother's progress in the case plan and toward reunification, satisfying §7B-906.2(d)(1). Additionally, Findings 17 and 18 track the language of and satisfy §7B-906.2(d)(2)–(3). Lastly, Finding 28 demonstrates that the court considered whether Mother was acting in a manner inconsistent with the safety of the juveniles, thereby satisfying §7B-906.2(d)(4).

Because a permanent plan of custody to a relative had been achieved, and the trial court made the necessary findings to show that reunification with Mother would be contrary to the juveniles' health or safety, the trial court properly eliminated

reunification with Mother as a permanent plan and met the requirements of a permanency planning hearing under §7B-906.2. *See In re K.P.*, 383 N.C. at 305. Mother did not argue that the trial court's findings were unsupported or otherwise failed to satisfy §7B-906.2. Thus, though the order was titled "90 Day Review Order," we hold that Mother received a permanency planning hearing. Accordingly, the trial court did not err by conducting the wrong hearing.

### C.     Custody of Anna

Mother argues that the trial court abused its discretion by awarding Mr. W full custody of Anna when it had no information regarding Mr. W's girlfriend who lived in the home. Mother contends that all adults living in a home should be assessed before custody is granted in the home. Mother cites several cases where this Court has considered a lack of information regarding other adults in the home when determining if a grant of custody or termination of parental rights was appropriate.

For example, in *In re A.H.*, No. COA15-1177, 2016 WL 2865063, at *3 (N.C. Ct. App. May 17, 2016), this Court remanded an order granting custody to a father living in Mexico after identifying several insufficiencies in the trial court's findings. There, the father had recently been deported and the children had never resided with him in Mexico. *Id.* at *1–3. The father had testified that he would be living with at least three other family members and the trial court "made no findings as to the appropriateness" of those people. *Id.* at *3, *3 n.4. Additionally, the trial court failed to consider how sending the children to live in another country would affect them,

whether the schools could accommodate the children's needs, and if any services would be available to the children in Mexico. *Id.* at *3.

In *In re R.A.X.*, 298 N.C. App. 341, 357 (2025), this Court affirmed the termination of a father's parental rights where he was unable to provide safe and stable housing for the child. The trial court made several findings supporting its determination including that the father lived with an "unknown number of unknown adults." *Id.* at 350. The social worker had not met any of the other residents of the home and the father had not provided their names or other identifying information. *Id.* at 345. Additionally, the father was sleeping on the couch and did not have a formal rental or lease agreement. *Id.*

Though *In re A.H.* and *In re R.A.X.* demonstrate that the presence of unvetted adults in the home may be a consideration in custody determinations, those cases are distinguishable from the present matter. First, in both *In re A.H.* and *In re R.A.X.*, the presence of unvetted adults in the home was just one factor among many considered by this Court. Here, Mother does not present any additional factors showing that Mr. W's home was not suitable or that awarding custody of Anna to Mr. W was not in Anna's best interest.

Second, Mr. W's girlfriend was vetted more than the other adults in *In re A.H.* and *In re R.A.X.*, and the trial court clearly considered her presence in the home. The identity of Mr. W's girlfriend and her presence in the home was known to DSS. Additionally, Anna had been residing with Mr. W and his girlfriend for several

months when the trial court issued its order. In a report dated 8 January 2025, DSS stated that "[Anna] continues to do well with her father, [Mr. W] and live in girlfriend." The trial court incorporated that report into its findings. The trial court also found that "the home of [Mr. W] is safe, suitable, and appropriate for [Anna]." Thus, the trial court made supported findings concerning Mr. W's live in girlfriend and the suitability of his home for Anna. Accordingly, we conclude that the trial court did not abuse its discretion in granting custody of Anna to Mr. W without requiring Mr. W's girlfriend to undergo a more extensive vetting process.

### D. Transfer to a Civil Custody Proceeding

Finally, Mother argues that the trial court erred when it transferred the case from a juvenile neglect proceeding to a civil custody proceeding without making proper findings. Specifically, Mother contends that the trial court 1) did not make adequate findings regarding the need for continued state intervention, and 2) needed more specific findings to support the entry of a custody order under Chapter 50. After careful consideration, we affirm in part and vacate and remand in part for entry of additional findings of fact.

### 1. Need for Continued State Intervention

N.C.G.S. § 7B-911(a) (2025) states that "[u]pon placing custody with a parent or other appropriate person, the court shall determine whether or not jurisdiction in the juvenile proceeding should be terminated and custody of the juvenile awarded to a parent or other appropriate person." If the court terminates jurisdiction in the

juvenile proceeding and awards custody, it should file the custody order in a civil action. *Id.* § 7B-911(b). When entering such an order, the trial court must specifically make a finding that "[t]here is not a need for continued State intervention on behalf of the juvenile through a juvenile court proceeding." *Id.* § 7B-911(c)(2). Where trial courts have failed to make this finding, this Court has remanded the case. *See In re J.B.*, 197 N.C. App. at 502.

Here, Finding 31 of the trial court's review orders for Ben and Anna state "[t]hat there is no longer a need for continued State intervention on behalf of the Juvenile through a juvenile court proceeding." Mother argues that this finding alone is insufficient. To support her claim, she cites *In re J.B.* and *In re J.D.R.* in which this Court found that the trial court failed to make the necessary finding that there was no need for continued State intervention. *In re J.B.*, 197 N.C. App. at 501–02; *In re J.D.R.*, 239 N.C. App. 63, 72–73 (2015). However, in both *In re J.B.* and *In re J.D.R.*, the trial court made *no* findings as to whether continued State intervention was necessary. *In re J.B.*, 197 N.C. App. at 502; *In re J.D.R.*, 239 N.C. App. at 72–73. We do not read § 7B-911(c)(2) or *In re J.B.* and *In re J.D.R.* as requiring more than the ultimate finding that continued State intervention is not necessary. Accordingly, we conclude that the trial court's order complied with § 7B-911(c)(2).

## 2. Chapter 50 Order

N.C.G.S. § 7B-911(c) also requires that when transferring a juvenile neglect case to a civil proceeding and entering a custody order, the trial court shall "[m]ake

findings and conclusions that support the entry of a custody order in an action under Chapter 50 of the General Statutes." § 7B-911(c)(1). In turn, Chapter 50 requires that custody of a child be granted to such person "as will best promote the interest and welfare of the child." N.C.G.S. §50-13.2(a). In determining the best interests of the child, the court "shall consider all relevant factors including acts of domestic violence between the parties, the safety of the child, and the safety of either party from domestic violence by the other party." *Id.* Additionally, "[a]n order for custody must include written findings of fact that reflect the consideration of each of these factors and that support the determination of what is in the best interest of the child." *Id.*

Overall, "[t]he judgment of the trial court should contain findings of fact which sustain the conclusion of law that custody of the child is awarded to the person who will best promote the interest and welfare of the child." *In re J.D.R.*, 239 N.C. App. at 72 (quoting *Green v. Green*, 54 N.C. App. 571, 572 (1981)). "These findings may concern physical, mental, or financial fitness or any other factors brought out by the evidence . . . ." *Id.* (quoting *Steele v. Steele*, 36 N.C. App. 601, 604 (1978)). For example, factors that this Court has considered relevant in custody determinations include a parent's history of mental illness, ability to provide suitable housing, drug use, progress on the DSS plans, and financial resources to support the child. *See id.*

Here, the trial court's grant of custody of Anna to Mr. W is supported by its findings of fact. The trial court made written findings that at the time of the hearing,

Mother continued to test positive for illicit substances during drug screens, did not have reliable transportation, had not completed her case plan, and could not provide suitable housing. Additionally, the trial court found that Mr. W did have reliable transportation, had made adequate progress within a reasonable time under the case plan, and had safe and suitable housing. These findings, among several others in the trial court's order, demonstrate the trial court's consideration of relevant factors and are sufficient to support its ultimate determination that it was in Anna's best interest to award custody to Mr. W. Therefore, we conclude that the trial court made sufficient findings as to custody of Anna pursuant to N.C.G.S. § 7B-911(c)(1).

The trial court made similar findings of fact in its orders granting custody of Ben to Mr. C. However, during the permanency planning hearing, the trial court recognized that there had been "some domestic violence issues within the past year" between Mother and Mr. C. The trial court's subsequent orders did not include any written findings about acts of domestic violence between the parties. Though the trial court may have considered the parties' history of domestic violence in making its custody determination, its failure to make corresponding written findings of fact violates N.C.G.S. § 50-13.2(a) and, by extension, N.C.G.S. § 7B-911(c). Accordingly, we vacate the trial court's "90 Day Review Order" and "Custody Order" for Ben and remand the matter for additional written findings of fact in accordance with N.C.G.S. § 7B-911(c) and N.C.G.S. § 50-13.2.

### III.  Conclusion

For the foregoing reasons, we affirm the trial court's orders granting custody of Anna to Mr. W and terminating jurisdiction in Anna's juvenile proceeding. We vacate the trial court's orders awarding custody of Ben to Mr. C and terminating jurisdiction in Ben's juvenile proceeding and remand for additional findings of fact in accordance with N.C.G.S. § 7B-911(c) and N.C.G.S. § 50-13.2.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR ADDITIONAL FINDINGS OF FACT.

Judges ZACHARY and WOOD concur.

Report per Rule 30(e).